Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAYS INNS WORLDWIDE, INC.,

    Plaintiff,

v.

AMAR SHAKTI ENTERPRISES, LLC., *et al.*,

    Defendants.

Civil Action No. 18-8011 (ES) (JAD)

OPINION

**SALAS, DISTRICT JUDGE**

    Days Inns Worldwide, Inc. ("DIW") filed a motion for default judgment against Amar Shakti Enterprises, LLC ("ASE") and Jayesh Patel (together, "Defendants"). (D.E. No. 11). The Court has considered DIW's submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court GRANTS DIW's motion for default judgment.

**I.    Background**

    DIW brings this action against Defendants for their alleged breaches of a license agreement. (*See* D.E. No. 1 ("Compl.")). On February 28, 2006, DIW and ASE entered into a license agreement that permitted ASE to operate a Days Inn guest lodging facility at 3755 Cheney Highway, Titusville, Florida (the "Facility") for a period of 15 years (the "License Agreement"). (*Id.* ¶¶ 9–10 & Ex. A).

    Pursuant to the License Agreement, ASE agreed to make periodic payments to DIW for royalties, system assessments, taxes, interests, reservation system user fees, and other fees (collectively, the "Recurring Fees"). (*Id.* ¶ 11 & Ex. A. § 7 & Sched. C). In order to calculate the

Recurring Fees, ASE also agreed to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by ASE in the preceding month. (*Id.* ¶ 13 & Ex. A § 3.8). ASE also agreed to maintain accurate financial information and to allow DIW to examine, audit, and make copies of these financial records. (*Id.* ¶ 14 & Ex. A §§ 3.8 & 4.8). Moreover, ASE agreed that interest is payable "on any past due amount payable to [DIW] under the [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶ 12 & Ex. A § 7.3).

Additionally, pursuant to Section 9 of the License Agreement, ASE further agreed that it "could not lease the Facility, nor engage in any change, assignment, transfer, conveyance, or pledge of its interest, except with DIW's prior written consent." (*Id.* ¶ 15). Any violation of Section 9 "would give DIW the right to terminate the License Agreement." (*Id.*). Further, Section 11.2 of the License Agreement permits DIW to "terminate the License Agreement, with notice to ASE, if ASE: (a) discontinued operating the Facility as a Days Inn guest lodging establishment; and/or (b) lost possession or the right to possession of the Facility." (*Id.* ¶ 16). Lastly, ASE also agreed that in the event of a dispute the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under the [License] Agreement." (*Id.* ¶ 17 & Ex. A § 17.4).

Patel, as the owner and principal of ASE, signed the License Agreement on ASE's behalf. (*See id.* ¶¶ 3–4 & Ex. A at 22). Additionally, Patel provided DIW with a guaranty (the "Guaranty") of DIW's obligations under the License Agreement, including the provisions discussed above. (*Id.* ¶ 17 & Ex. C). Relevant here, Patel personally agreed that upon a default under the License Agreement, he would "immediately make each payment and perform or cause [ASE] to perform,

each unpaid or underperformed obligation of [ASE] under the [License] Agreement." (*Id.*, Ex. C). Patel also agreed to "pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement." (*Id.* ¶ 20).

On or about March 16, 2015, ASE transferred the Facility to a third party without obtaining prior consent from DIW. (*Id.* ¶ 21). On March 25, 2015, DIW sent ASE a letter notifying ASE that this transfer constituted a termination of the License Agreement, and that pursuant to the same ASE was required to pay DIW all outstanding Recurring Fees through the date of termination. (*Id.* ¶ 22 & Ex. D). Thereafter, on April 18, 2018, DIW initiated this action asserting that Defendants breached the License Agreement and Guaranty by, among other things, failing to remit $114,693.35 in Recurring Fees due and owing to DIW. (*Id.* ¶¶ 23–38).

DIW hired RECON Management Group, LLC ("RECON") to effectuate personal service upon Defendants. (D.E. No. 5 ¶ 3). On June 5, 2018, Cynthia R. Lee, a RECON employee, provided DIW with an affidavit detailing RECON's unsuccessful efforts to serve Defendants. (*See id.* at 4 & 9).[1] Particularly, RECON found that ASE is an inactive company that was dissolved in 2015 for failure to file an annual report, and that its registered agent is defendant Patel. (*Id.*). RECON determined that Patel's address was 133 South Ocean Avenue, Daytona Beach, Florida, which was also listed as ASE's principal place of business. (*Id.* at 4 & 9). In addition, ASE also had a listed mailing address at 3755 Cheney Hwy., Titusville, Florida. (*Id.* at 4). On May 25, 2018, RECON's process server attempted to serve Defendants at the 133 South Ocean Avenue address. (*Id.* at 4 & 9). The receptionist present stated that she was not familiar with anyone named Jayesh Patel or ASE, but that mail is received at this address in Patel's name. (*Id.*). That

---

[1] References to page numbers in Docket Entry Number 5 refer to the CM/ECF pagination generated on the upper-right corner.

same day, the process server attempted service at the 3755 Cheney Hwy. address. (*Id.*). The receptionist at this location stated that Patel had sold the business three years earlier and that she did not have a forwarding address. (*Id.*). On May 29, 2018, the process server attempted service again at the 133 South Ocean Avenue address, and a different receptionist advised that he also did not know Defendants. (*Id.*). On May 30, 2018, the process server again attempted service, and another receptionist advised that Patel may be the owner of the property, but she was not sure. (*Id.* at 5 & 10). RECON then conducted additional research, but was unable to find an alternative address for either Defendant. (*Id.*). Thereafter, DIW's counsel served Defendants via ordinary and certified mail, return receipt requested. (*Id.* ¶ 5 & Ex. B).

Defendants failed to answer, move, or otherwise respond to the Complaint. On July 31, 2018, DIW filed a request for entry of default against Defendants for their for failure to plead or otherwise defend (D.E. No. 6), which the Clerk granted. DIW then filed the instant motion for default judgment. (*See* D.E. No. 11). To date, Defendants have not filed an answer or otherwise responded to the Complaint.

**II.     Legal Standard**

Federal Rule of Civil Procedure 55 permits a district court to enter default judgment against a party who fails to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To initiate the process for default judgment, the plaintiff must request entry of default by the Clerk of the Court. *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Following entry of default judgment, the plaintiff must file a motion for default judgment requesting relief from the district court. *Id.*

The district court has wide discretion to determine whether an entry of default judgment is appropriate. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A.*

*Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). "Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The propriety of entering default judgment also depends on the Court's "explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

In deciding these issues, "the factual allegations of the complaint, except those as to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). The Court must determine the amount of damages when the amount the plaintiff requests is not a sum certain or a sum that can be made certain by computation of facts present in the record. *See* Fed. R. Civ. P. 55(b). "The district court has considerable latitude in determining the amount of damages. The court is not required to conduct a hearing 'as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Cornwell Quality Tools Co. v. Blanco*, No. 16-5086, 2018 WL 2441750, at *2 (D.N.J. May 31, 2018) (quoting *Super 8 Worldwide, Inc. v. Urmita, Inc.*, No. 10-5354, 2011 WL 2909316, at *2 (D.N.J. July 18, 2011)). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J.

2009) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

**III.     Discussion**

*Subject-matter jurisdiction.*  District courts have original subject-matter jurisdiction in civil actions when the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  A corporation is deemed to be a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  For individuals, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation.'"  *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)).  Moreover, the amount in controversy is determined by the amount pled in the complaint, unless it is legally certain that the plaintiff cannot recover that amount.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

In the instant case, DIW is a corporation incorporated in the state of Delaware with its principal place of business in New Jersey.  (Compl. ¶ 1).  Defendants are citizens of the state of Florida, since ASE is incorporated under Florida law with a principal place of business in Florida, and Patel is domiciled in Florida.  (*Id.* ¶¶ 2–4).  Thus, the Court finds that the diversity of citizenship requirement is satisfied.  Additionally, DIW pled $114,693.35 in damages resulting from unmet License Agreement obligations, well above the required $75,000.  (*See id.* ¶ 29).  DIW calculated this amount by relying on the gross revenue information that ASE provided and estimated gross room revenue to the extent that ASE did not report its finances.  (D.E. No. 11-5 ¶¶ 16–17).  Consequently, the Court finds that it has subject-matter jurisdiction over this matter.

*Personal jurisdiction and venue.*  "The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or

unjust to do so." *Knights Franchise Sys., Inc. v. Patel*, No. 16-1707, 2017 WL 5191805, at *3 (D.N.J. Nov. 9, 2017) (quoting *Park Inn Int'l, LLC v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000)). In *Knights Franchise*, the district court found the parties' contractual consent "to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey" constituted a valid consent to personal jurisdiction and venue in New Jersey. *Id.*

Here, the License Agreement specifically states that ASE consents and waives objection "to the non-excusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey." (Compl., Ex. A. § 17.6.3). Similarly, Patel consented to personal jurisdiction and venue through the Guaranty, in which he agreed to be personally bound by Section 17 of the License Agreement. (*Id.*, Ex. C). Like the court in *Knights Franchise*, this Court "sees no reason why this freely agreed-upon consent to personal jurisdiction in New Jersey should not be enforced. Therefore, the Court has personal jurisdiction over Defendants." *See Knights Franchise*, 2017 WL 5191805, at *3.

***Service of process.*** "Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Id.* at *4 (citing *Teamsters Pension Fund v. American Helper, Inc.*, No. 11-0624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)).

Here, the Defendants were properly served. Federal Rule of Civil Procedure 4 permits service upon an individual or corporate defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e) & (h). In turn, New Jersey law permits service by mail when "despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule." N.J. Ct. R. 4:4-4(b)(1). To serve an individual by mail the plaintiff

must "mail[ ] a copy of the summons and complaint by registered or certified mail, return receipt requested, and simultaneously, by ordinary mail to . . . the individual's dwelling house or usual place of abode." *Knights Franchise*, 2017 WL 5191805, at *4 (quoting N.J. Ct. R. R. 4:4–4(b)(C)). Similarly, a plaintiff may serve a corporation via mail by "mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and simultaneously by ordinary mail" to the corporations' "registered agent for service, or to its principal place of business, or to its registered office." N.J. Ct. R. 4:4-4(b)(C); *see also Trustees of the N.J. B.A.C. Health Fund v. Everest Masonry Constructors Inc.*, No. 15-7703, 2017 WL 385036, at *2 (D.N.J. Jan. 26, 2017).

Here, DIW hired RECON to serve Defendants. (D.E. No. 5 ¶ 3). RECON made diligent efforts and inquiry, but was unable to locate Defendants. (*Id.* ¶ 4). Then, by regular and certified mail with return receipt requested, DIW served Defendants with the Summons and Complaint on June 8, 2018. (*Id.* ¶ 5 & Ex. B). As such, the Court finds that both Defendants were properly served. *See, e.g.*, *Knights Franchise*, 2017 WL 5191805, at *4; *Everest Masonry Constructors Inc.*, 2017 WL 385036, at *2. In short, the Court is satisfied that it has jurisdiction over this action and over the Defendants, and may thus decide the pending motion.

***Sufficiency of the allegations.*** DIW seeks default judgment for its breach of contract claim. (D.E. No. 11-3 at 4). In a breach of contract claim, the plaintiff must show that three elements are met: (i) the parties entered into a valid contract; (ii) the defendant breached the contract; and (iii) the plaintiff suffered damages caused by the breach. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).

DIW alleges that the License Agreement is a valid contract between DIW and ASE, and that the Guaranty is a valid contract between DIW and Patel, obliging Defendants to pay the Recurring Fees in question. (*See* Compl. ¶¶ 9–20). DIW further alleges that Defendants have

breached their obligations under the contracts by, among other things, failing to pay the required Recurring Fees. (*Id.* ¶¶ 24–26, 28–30, 32–33 & 36–38). Lastly, DIW alleges that its suffered damages as a result of the breach because Defendants did not pay the required Recurring Fees. (*See id.* ¶¶ 29, 33 & 38). Thus, taking these factual allegations as true, as this Court must do, DIW has sufficiently stated a claim upon which relief may be granted. *See Comdyne*, 908 F.2d at 1149.

***Appropriateness of default judgment.*** The Court must next determine whether entry of default judgment is proper. *See Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012). This inquiry requires the Court to "make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177 (quoting *Sambrick*, 834 F.2d at 74).

Each of these elements is satisfied based on the present record. First, the Court finds that based upon the facts alleged by the Complaint, and in the absence of any responsive pleadings, Defendants do not have any meritorious defense for their failure to meet their contractual obligations. *See, e.g.*, *Moroccanoil, Inc.*, 2015 WL 6673839, at *2. Second, the Court finds that DIW will suffer prejudice in the absence of default judgment, as DIW has no other means for relief. *See, e.g., id.* Finally, Defendants failure to respond or otherwise appear before the Court leads the Court to presume that Defendants are culpable. *See, e.g., Teamsters Pension Fund*, 2011 WL 4729023, at *4; *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a court can find culpability where a defendant fails to respond to communications). Under these circumstances, the Court finds default judgment is proper.

*Monetary damages.* Unlike the factual allegations of the Complaint that are assumed to be true for the purpose of proving liability, the plaintiff must prove the amount of damages. *See Comdyne*, 908 F.2d at 1149.

DIW requests that the Court enter default judgment against Defendants for the amount owed in Recurring Fees, calculated at $119,073.05 as of January 7, 2019. (D.E. No. 11-3 at 5; D.E. No. 11-5 ¶¶ 16–17 & Ex. E). These Recurring Fees were calculated according to the formulas set forth in Section 7 and Schedule C of the License Agreement. (*See* D.E. No. 11-3 at 5; Compl., Ex. A). DIW supports the damage amount through a sworn affidavit of DIW's Senior Director of Contracts Compliance and an itemized statement. (*See* D.E. No. 11-5 & Ex. E). Although some of the accruals in the statement are marked with an asterisk indicating they are estimates (*see, e.g.*, D.E. No. 11-5, Ex. E at 3 & 6), the Court recognizes that DIW's inability to provide a more accurate accounting is the result of Defendants' failure to comply with their contractual obligation to "allow [DIW] to examine, audit, and make copies of ASE's financial information" (*see* Compl. ¶ 14 & Ex. A §§ 3.8 & 4.8). After considering the estimated amounts in light of the obligations laid out in Section 7 and Schedule C of the License Agreement, and the amounts reported with certainty in the itemized statements, the Court finds the total requested amount of $119,073.05 to be reasonable and appropriate. (*See id.*, Ex. A; *see also* D.E. No. 11-5, Ex. E); *see, e.g.*, *Ramada Worldwide Inc. v. ERS Invs., Inc.*, No. 07-1095, 2008 WL 163640, at *8 (D.N.J. Jan. 16, 2008) ("In the absence of better evidence to prove lost royalties, Ramada calculations for infringement damages based on the average recurring fees incurred by ERS on its reported gross room revenue are acceptable."). Therefore, the Court awards DIW the requested relief of $119,073.05.

**IV.     Conclusion**

For the foregoing reasons, the Court GRANTS DIW's motion for default judgment. An

appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**